ILLINOIS VALLEY ASPHALT, INC., Plaintiff-Appellee, *v.* J. F. EDWARDS CONSTRUCTION COMPANY, Defendant-Appellant.

Third District   No. 80-75

Opinion filed November 26, 1980.

Frederick P. Kopp, of Spector, Tappa, Kopp & Nathan, of Rock Island, for appellant.

Larry D. Kuster, of Rammelkamp, Bradney, Hall & Dahman, of Jacksonville, for appellee.

Mr. JUSTICE STOUDER delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Henry County finding in favor of plaintiff, Illinois Valley Asphalt, Inc. (Illinois Valley), and against defendant, J. F. Edwards Construction Company (Edwards Construction). Plaintiff brought the action to recover damages caused by the refusal of the defendant to perform construction subcontract work in accordance with a bid proposal made to plaintiff.

In mid-May of 1976 the State of Illinois notified contractors of its proposed construction work at Capital Airport in Springfield, Illinois. Bids for the project were to be opened at the airport on June 7, 1974, at approximately 10 a.m. Illinois Valley prepared and submitted a bid as general contractor. Edwards Construction submitted bids for the electrical subcontract work to several general contract bidders.

Plaintiff and defendant had never done business prior to this time and the first contact between the parties occurred the day before the bid letting. John Edwards, Sr., president of Edwards Construction, telephoned James Bruner, the secretary-treasurer of Illinois Valley, on June 6, 1974, inquiring as to whether Illinois Valley was interested in receiving Edwards Construction's price quotations for the electrical work. Bruner asked Edwards to call back when Edwards could give him prices. Edwards called him back at about 11:30 p.m. with firm prices. The content of the conversation is disputed, with Edwards testifying at trial that they discussed material prices and Bruner testifying there was no such discussion. It is undisputed that when Edwards asked how his prices looked, Bruner said he would have to compare them against other quotes to see how they looked.

The next contact between Edwards and Bruner occurred at the bid letting the next morning. Edwards testified that he arrived early and began to pass out letters to various contractors which confirmed Edwards Construction's price quotations for the electrical work. He gave one of Illinois Valley's representatives a letter containing a typed enclosure sheet and several pages of price quotes confirming the quotes given to Bruner the previous evening. The second paragraph of the enclosure letter stated:

> "Due to the instability of copper and other critical materials priced from our suppliers and consolidated into our quotation, we must request an intent of award no later than June 10, 1974 so as to hold material pricing and make our quotation firm beyond that date."

The bids were opened and Illinois Valley was the low bidder. However, there was doubt as to whether the State would award the contract since all the bids exceeded the State's estimated costs.

Subsequent to the bid opening, Edwards followed Illinois Valley's representatives into the hallway, introduced himself, and asked Bruner how his prices were. The substance of the ensuing conversation is disputed. Edwards testified Bruner responded "Your prices are in line" and walked away. Bruner testified that he told Edwards that if Illinois Valley got the job then Edwards Construction would get the job.

There was no further contact between Illinois Valley and Edwards Construction until Illinois Valley sent Edwards Construction the subcontracts for execution. They were mailed around June 24, 1974, and

received around June 26 or 27. Edwards Construction returned the subcontracts on July 3, stating that its letter of June 6 had requested an intent of award by June 10 and that defendant was therefore unable to execute the contracts as submitted.

At trial both parties presented evidence as to what constitutes an intent of award in the construction industry and whether the conversation in the hallway constituted an intent of award. Illinois Valley called two witnesses who testified that the phrase "If I get a job, you have got a job" constituted an intent of award in the construction industry if given orally by a general contractor to a subcontractor. Edwards Construction called a witness who testified that the phrase "If I get the contract, you get the contract" would be an acknowledgment that the subcontractor was the low bidder. He also testified that the normal practice would be to send a letter to show an intent of award, although he conceded on cross-examination that it could be done orally.

The trial court found in favor of Illinois Valley on a theory of promissory estoppel and awarded a sum of $14,681.75. On appeal, defendant raises two issues: (1) whether the evidence establishes that plaintiff rejected defendant's bid and therefore, there was no contract as a matter of law; and (2) whether the doctrine of promissory estoppel is inapplicable in the instant case. We affirm.

■■ We initially note that defendant's first issue dealing with contract theory is irrelevant to this appeal in that plaintiff has proceeded on a theory of promissory estoppel, not contract. Promissory estoppel is a doctrine under which a plaintiff may recover without the presence of a contract, and Illinois courts have permitted suit on this theory in the absence of a contract. (See *Jenkins & Boller Co. v. Schmidt Iron Works, Inc.* (1976), 36 Ill. App. 3d 1044, 344 N.E.2d 275; *S. M. Wilson & Co. v. Prepakt Concrete Co.* (1974), 23 Ill. App. 3d 137, 318 N.E.2d 722.) Therefore, the absence of a contract does not preclude a recovery by plaintiff under a theory of promissory estoppel.

We now turn to the issue of whether or not promissory estoppel is appropriate in the case at bar. The elements of promissory estoppel are: (1) a promise unambiguous in terms; (2) reliance on such promise by the party to whom it is made; (3) this reliance is expected and foreseeable by the party making the promise; and (4) the one to whom the promise is made must rely on the promise to his injury. (*S. M. Wilson & Co. v. Prepakt Concrete Co.*) Whether or not these factors are all present is a question of fact to be determined by the trial court, and we cannot reverse the trial court's decision unless it is against the manifest weight of the evidence. In its judgment order, the court specifically made the factual finding that each element was present. The court found that on

June 6, Edwards Construction made a promise to Illinois Valley that was unambiguous in its terms in the form of a subcontract bid. This fact is undisputed. The court next found that Illinois Valley relied on the subcontract bid in preparing its bid to the State. This fact is also undisputed.

■■ The court next found that Illinois Valley's reliance was expected and foreseeable by Edwards Construction. It is this fact which Edwards Construction contends is against the manifest weight of the evidence. Defendant contends that the letter which was given to Illinois Valley on June 7 required that Illinois Valley make an intent of award, that Illinois Valley did not do so, and therefore, Illinois Valley could not reasonably rely on the subcontract bid. Illinois Valley contends, however, that it did make an intent of award and therefore its reliance was expected and foreseeable. In view of Bruner's testimony that he told Edwards "If I've got a job, you've got a job" and other witnesses' testimony that this constituted an intent of award in the custom and usage of the construction industry, we do not find the court's holding that Illinois Valley's reliance was expected and foreseeable to be against the manifest weight of the evidence.

The court's final finding, that Illinois Valley relied on the promise to its detriment in the sum of $14,681.75, is not disputed. Since none of the trial court's findings is against the manifest weight of the evidence, we find its holding that the defendant is liable under a theory of promissory estoppel is not against the manifest weight of the evidence.

For the abovementioned reasons, the judgment of the circuit court of Henry County is affirmed.

Affirmed.

ALLOY, P. J., and SCOTT, J., concur.