CAMOSY, INC., Plaintiff-Appellant, v. RIVER STEEL, INC., Defendant-Appellee.

Second District   No. 2—92—1445

Opinion filed December 9, 1993.

Thomas A. Morris, Jr., and C. Dirk McElravey, both of Brydges, Riseborough, Morris, Franke & Miller, of Waukegan, for appellant.

Peter G. Swan, of Emalfarb, Swan & Bain, of Highland Park, for appellee.

JUSTICE COLWELL delivered the opinion of the court:

Plaintiff, Camosy, Inc., appeals from the judgment of the circuit court granting a directed finding in favor of defendant, River Steel, Inc. Plaintiff, a general contractor, had filed a one-count complaint based upon promissory estoppel, alleging injury resulting from its reliance upon defendant's bid proposal for a construction project. Plaintiff contends that the trial court erred in directing a finding in favor of defendant at the close of plaintiff's case because plaintiff's *prima facie* case under the doctrine of promissory estoppel was supported by a preponderance of the evidence. We affirm.

Plaintiff is a general contractor that prepared a bid for general contracting services at the Grayslake Junior High School project. Defendant is a structural steel subcontractor based in Wisconsin and doing business in Lake County, Illinois.

The deadline for submitting proposals to the school district was 3 p.m. on January 9, 1991. At approximately 2:19 p.m., plaintiff received a written proposal from defendant. The proposal stated in part:

"[W]e propose to furnish materials and labor at the prices and terms as stipulated below:

Furnish and erect per plans & specs: No addendums."

There followed a listing of tonnage for the structural metal framing and metal fabrications involved in defendant's proposal and a total price figure of $94,500.

On the same page of the proposal, the following was stated:

"EXCLUDE: Drawings under supervision of professional registered Engineer, Rough hardware for other trades, Aluminum expansion joint covers, Stainless steel table tops/legs, Grouting, Touch-up paint, Metal access panels, Abrasive stair inserts, Ladder, 05510 (metal stairs) 05521 (pipe & tubing) Railings, Cutting & welding of steel for P.C., Erection, Demolition."

Plaintiff evidently received 13 other bids from subcontractors. One of them excluded the erection of the structural steel, although it did include, unlike defendant's proposal, the supply and the erection of the stairs, ladders, and railings. The amount of this bid was $82,836. The remaining proposals included both the fabrication and the erection of the structural steel, as well as the supply and the erection of the stairs, ladders, and railings. These bids ranged from $147,421 to $236,000, with an average bid amount of $176,619.39.

At approximately 2:25 p.m. on January 9, 1991, Richard Grabowski, the chief estimator for Camosy, Inc., called River Steel, Inc., and spoke with Ron Mussa, an estimator employed by River Steel, Inc. Grabowski informed Mussa that defendant's proposal did not acknowledge addenda to the project's specifications and that its price was "way low." The two men also confirmed defendant's exclusion of the steel for the stairs, ladders, and railings. They did not discuss whether defendant's proposal included the erection of the structural steel. After reviewing the addenda, Mussa telephoned Grabowski and told him that the addenda did not affect defendant's price.

Plaintiff used defendant's bid in conjunction with another company's proposal to fabricate and install the steel stairs, railings, and ladders for a price of $11,900 in the preparation of plaintiff's proposal to

the school district. Shortly after 3 p.m. on January 9, 1991, the bids were opened in a public meeting, and plaintiff was determined to be the low, responsive bidder for the project. On or about January 14, 1991, plaintiff was awarded a contract in the sum of $2,515,300 for the project.

On approximately January 23, 1991, Grabowski telephoned Mussa and informed him that plaintiff had been awarded a contract and had "utilized a number of $94,500." At this time Grabowski desired to have one subcontractor do all of the structural steel work, and he asked Mussa to put together pricing for the steel stairs, ladders, and railings. Mussa said that he would get back to Grabowski.

Grabowski called River Steel, Inc., early in February and was told by Mussa that he would have to speak with the office manager, Roger Wilinski. Wilinski stated that the price including stairs, ladders, and railings would be approximately $113,000. Grabowski responded that Wilinski could "purchase" this work for around $104,000 or $106,000. Wilinski said that he would have to get back to Grabowski.

On February 3 or 4, 1991, Grabowski called Wilinski and Wilinski stated that defendant did not accept plaintiff's offer. According to Grabowski's testimony, Wilinski also stated that defendant had made a mistake in the original proposal in that it had left out the cost of erection of the structural steel.

Following this conversation, Grabowski sent defendant a letter of intent, dated February 4, 1991, to award defendant a subcontract per defendant's January 9 proposal. On or about February 6, 1991, Wilinski telefaxed to plaintiff a copy of the intent letter with a handwritten note by Wilinski stating "we reject this job as proposed, see ltr Feb.4.91 herewith." The reference was to a letter to Wilinski from Timothy Brennan, the president of River Steel, Inc., stating:

> "After discussing the Grayslake Jr. High School project, and reviewing the file on that project, I have to concur that there was an error in bidding that project. We made a mistake and bid the job installed, but did not add in the erection price.
>
> Please relate this mistake to the contractor, as we cannot perform the job as proposed. The erection would add $52,500.00 to the proposal. The proposal price should be $147,000.00, without the inclusion of $13,190.00 [for the stairs, ladders, and railings], $160,900.00 with the inclusion."

On February 8, 1991, defendant's counsel notified plaintiff by telefax that defendant had "inadvertently omitted" the erection costs from its bid, and on February 12, 1991, defendant rescinded its bid.

On March 25, 1991, plaintiff filed a one-count complaint against defendant. Although the complaint does not mention promissory estoppel, plaintiff states in its motion for summary judgment on defendant's affirmative defenses that the complaint as filed was based upon promissory estoppel. A bench trial was conducted on August 10, 1992, at which plaintiff presented the testimony of Richard Grabowski, various exhibits, and the evidence deposition of Ron Mussa. At the close of plaintiff's case, defendant moved for a directed finding, which the trial court granted in favor of defendant.

On September 4, 1992, plaintiff filed a motion for reconsideration, and the trial court heard oral arguments on the motion on November 9, 1992. The trial court held that plaintiff had presented a *prima facie* case for promissory estoppel but, after weighing the evidence, found, *inter alia*, that "there is an ambiguity as far as the term erection" is concerned. The court then reaffirmed its granting of defendant's motion for a directed finding. Plaintiff appeals both the August 10, 1992, and the November 9, 1992, rulings.

The question before us is whether, based on the evidence and the applicable law, the trial court properly made a directed finding for defendant.

Plaintiff contends that the court's decision to direct a finding in favor of defendant was erroneous. In a nonjury case, when ruling on a motion for a directed finding at the close of plaintiff's case in chief, the court is to take into account all the evidence, including any which supports defendant's position; make judgments regarding the credibility of the witnesses; draw inferences from the testimony; and consider the weight and quality of the evidence. 735 ILCS 5/2—1110 (West 1992); *Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 154.

■ When presented with a motion to direct a finding, the trial court must first determine, as a matter of law, whether the plaintiff has made out a *prima facie* case. (*Kokinis*, 81 Ill. 2d at 154-55.) A plaintiff has made out a *prima facie* case if it has presented at least some evidence on every element essential to the cause of action. (*Kokinis*, 81 Ill. 2d at 154.) If a *prima facie* case has been presented, the trial court must go further and, after weighing the plaintiff's evidence, decide if any of the evidence necessary to plaintiff's *prima facie* case has been negated. If it has, then the action must be dismissed. *Kokinis*, 81 Ill. 2d at 155; *Rasmussen v. LaMagdelaine* (1991), 208 Ill. App. 3d 95, 102.

A reviewing court may reverse the determination made by the trial court only if it is contrary to the manifest weight of the evidence. (*Kokinis*, 81 Ill. 2d at 154.) For a judgment to be against the

manifest weight of the evidence, it must appear that a conclusion opposite to that reached by the trier of fact is clearly evident. *In re Application of Kane County Collector* (1985), 135 Ill. App. 3d 796, 805.

With these principles in mind, we consider whether the court erroneously entered a directed finding for defendant.

■ To establish a claim based upon promissory estoppel, plaintiff must allege and prove that (1) defendant made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendant, and (4) plaintiff relied on the promise to its detriment. *Quake Construction, Inc. v. American Airlines, Inc.* (1990), 141 Ill. 2d 281, 309-10.

In the case before us, the parties misstate the level of proof required for establishing a *prima facie* case following a motion for a directed finding. Defendant erroneously states in its brief that to establish a *prima facie* case based upon a theory of promissory estoppel, plaintiff must "establish [the elements] by a preponderance of the evidence." Plaintiff seizes upon defendant's misstatement of the law and argues in its reply brief that it is not possible both to find that plaintiff has proven its case by a preponderance of the evidence and to direct a finding for defendant.

In fact, as stated above, plaintiff need only present some evidence on each element essential to the cause of the action in order to make out a *prima facie* case. (*Kokinis*, 81 Ill. 2d at 154.) The trial court then undertakes a weighing process, and if that process does not negate any of plaintiff's evidence necessary for its *prima facie* case, the directed verdict should be denied. *Kokinis*, 81 Ill. 2d at 155; *J.W. O'Brien Corp. v. Alloy Piping, Inc.* (1984), 128 Ill. App. 3d 978.

After considering plaintiff's motion for reconsideration, the trial court found that plaintiff had presented at least some evidence on each element essential to a promissory estoppel action and therefore had established a *prima facie* case. However, based on its assessment of all of the evidence, the court determined, *inter alia*, that ambiguity did exist in the terms of the promise defendant made to plaintiff. We find that determination to be dispositive.

■ Application of the two-step process described above for ruling on a motion for a directed finding supports the trial court's findings with respect to ambiguity. Plaintiff presented some evidence that the terms of defendant's proposal were unambiguous. However, the court is to weigh all of the evidence, including that which is favorable to the defendant, and is not to view the evidence in the light most favorable to the plaintiff. (*Kokinis*, 81 Ill. 2d at 154; *McHenry State Bank v. City of McHenry* (1983), 113 Ill. App. 3d 82, 84.) After reviewing all

of the evidence, we believe that a conclusion opposite to that reached by the trial court is not clearly evident.

We agree with plaintiff that the letters of defendant's president and counsel, which refer to a bidding mistake involving the omission of the cost of erection, tend to signify an unambiguous intention on defendant's part to include the price of erection in its bid. However, other evidence presented by plaintiff is less conclusive.

On its face, the bid proposes to "[f]urnish and erect" the structural steel; however, it also includes "[e]rection" in its list of exclusions. Plaintiff advances the testimony of Richard Grabowski and the evidence deposition of Ron Mussa to support its contention that there is no ambiguity in the proposal's terms.

Grabowski testified to his understanding that defendant's bid included both the furnishing and the erection of the structural steel. Grabowski also stated that the capitalized word "Erection" in the exclusion paragraph of the proposal refers only to the term "P.C.," or precast concrete. However, "Cutting & welding of steel for P.C." appears to stand as a unit. "Erection" follows "P.C." and is separated from it by a comma. Grabowski further testified that the next word in line, "Demolition," applies to the entire job, even though, like "Erection," it is capitalized and separated from the preceding words by a comma.

The syntax of the exclusion paragraph strongly suggests that both "Erection" and "Demolition" refer to the same thing. Grabowski stated his opinion that "Demolition" applies to the entire project. We think it is equally reasonable to conclude that "Erection," which is similarly situated in the sentence, also applies to the entire project.

Less susceptible to reason is why the two plausibly contradictory provisions would appear on the face of the proposal. Perhaps defendant intended to eliminate the first reference to erection when the exclusion paragraph was added; perhaps the intention was to edit "Erection" out of the exclusion paragraph. That such speculations arise further indicates to us that defendant's proposal, on its face, does not present a promise unambiguous in its terms.

Ron Mussa stated his opinion that, according to the proposal shown to him during his evidence deposition, defendant was supposed to have included in its price the erection of the structural steel. Mussa further stated that the word "erection" in the exclusions paragraph of the proposal did not apply to the structural steel. However, Mussa's memory was generally vague regarding the circumstances of the disputed proposal. He also stated that he did not put this proposal together; rather, his job was to supply information to another office of

defendant, where the proposal packages were put together and sent back to him for telefaxing to the construction companies bidding the jobs.

Plaintiff states its belief that the trial court did not read and consider Mussa's evidence deposition, despite the court's compliance with plaintiff's request that an order be entered stating that the court had read and considered the evidence deposition but could not recall the specific date or dates that it did so. We decline to challenge the trial court's statement that, to the best of its recollection, the deposition was read and considered. Furthermore, as discussed above, we find Mussa's opinions less than conclusive as to the issue of ambiguity.

Plaintiff's remaining contention with respect to the question of ambiguity is unpersuasive. Plaintiff maintains that defendant admitted that its bid proposal included erection, because defendant did not effect a denial in its answer. We find that defendant's answer to plaintiff's allegation admits to nothing more than the fact that it submitted the proposal.

We cannot say that the findings of the trial judge are against the manifest weight of the evidence, and we affirm the trial court's order directing a finding in favor of defendant.

Affirmed.

BOWMAN and QUETSCH, JJ., concur.