No. 2--00--1194

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

PICKUS CONSTRUCTION AND ) Appeal from the Circuit

EQUIPMENT, ) Court of Lake County

)

Plaintiff-Appellee, )

)

v. ) No. 98--L--535

)

AMERICAN OVERHEAD DOOR, ) Honorable

) Barbara C. Gilleran-Johnson,

Defendant-Appellant. ) Judge, Presiding.

_________________________________________________________________

JUSTICE GROMETER delivered the opinion of the court:

Defendant, American Overhead Door (AOD), appeals from a judgment of the circuit court of Lake County entered in favor of plaintiff, Pickus Construction & Equipment (Pickus Construction).  Following a bench trial, the trial court awarded plaintiff $35,079.  Defendant contends that the trial court's judgment was contrary to the manifest weight of the evidence.  For the following reasons, we reverse.

Before turning to the merits of this appeal, we wish to address the parties' disregard of the supreme court rules concerning appellate briefs, which has needlessly hindered this court in reaching a decision.  Both parties frequently ignore the rules pertaining to the citation of authorities.  Rule 341(e)(7) states that arguments must be supported with citation to authority.  188 Ill. 2d R. 341(e)(7).  Rule 341(d) provides that "[c]itations shall be made as provided in Rule 6."  188 Ill. 2d R. 341(d).  Rule 

6 mandates that "[c]itations of cases must be by title, to the page of the volume where the case begins, and to the pages upon which the pertinent matter appears in at least one of the reporters cited."  145 Ill. 2d R. 6.  These rules are not mere suggestions; they are mandatory, and this court possesses the discretion to impose appropriate sanctions for violations.  See 
Geers v. Brichta
, 248 Ill. App. 3d 398, 400 (1993).  We would be justified in finding a number of these arguments waived.  See 
Chicago Title & Trust Co. v. Weiss
, 238 Ill. App. 3d 921, 927-28 (1992) (noting violation of Supreme Court Rule 341(d), which incorporates Supreme Court Rule 6, can result in waiver of an argument).  Had we exercised this prerogative, the result of this case might have been different.  Defendant also raises some arguments for the first time in its reply brief, which we will not consider.  See 188 Ill. 2d R. 341(e)(7) ("Points not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing"). 

Further, both parties have violated numerous other supreme court rules.  Despite the clear dictate
 of Supreme Court Rule 6 that "[i]t is not sufficient to use only 
supra
 or 
infra
," plaintiff does so.  145 Ill. 2d R. 6.  The covers of both defendant's main brief and reply brief do not name the trial judge entering the judgment under review, in contravention of Supreme Court Rule 341(b).  188 Ill. 2d R. 341(b).  Defendant has also disregarded Supreme Court Rule 341(e)(2), in that its introductory paragraph does not contain a statement as to "whether any question is raised on the pleadings."  188 Ill. 2d R. 341(e)(2).  Additionally, Supreme Court Rule 341(e)(7) provides that "[c]itation of numerous authorities in support of the same point is not favored."  188 Ill. 2d R. 341(e)(7).  Nevertheless, plaintiff cites four cases which set forth the elements of promissory estoppel.  None of the four citations indicate upon which pages these elements appear.  Thereafter, plaintiff provides two cases in support of the proposition that " '[p]romissory estoppel' is a doctrine under which a plaintiff may recover without the presence of a contract."  Both of these citations use only 
supra
.  Both parties, as well as all appellate counsel, are advised to pay close attention to these rules in the future.

BACKGROUND

Plaintiff is a construction company that was engaged as the general contractor on a project known as the Wheaton Public Works Project (Wheaton Project).  James Pickus has been the company's vice-president of operations since 1990.  In this position, he is involved in bidding and reviewing contracts between plaintiff and its various clients and subcontractors.  Defendant is a company that is in the business of supplying and installing overhead doors.  Larry Hooker has been its president for over 30 years.  At the time of the events that form the basis of this suit, Trevor Murphy was employed by defendant as a salesman.

Plaintiff received plans for the Wheaton Project early in September 1997.  Bidding on the project was to close on September 26, 1997.  The parties dispute whether plaintiff invited defendant to submit a bid or defendant learned of the project from an independent source.  Pickus testified that plaintiff does not send out specifications for a project with invitations; rather, it makes follow-up calls to see which subcontractors are interested and provides them with plans and specifications.  Hooker testified that defendant learned of the Wheaton Project through the Dodge Report, a trade publication that lists upcoming projects.  According to Hooker, when it learns of a project in this manner that it is  interested in, it goes to the Dodge Room--apparently a facility maintained by the publishers of the Dodge Report--or directly to a general contractor to obtain plans.  Hooker stated that defendant does not ignore specifications when bidding a job.  The specifications for the Wheaton Project required the use of Fimble doors or a comparable alternative.  Fimble is a manufacturer of overhead doors.

On September 22, 1997, plaintiff received defendant's first bid on the Wheaton Project by fax.  In this bid, defendant proposed to supply 18 doors, of various sizes and types, at a cost of $76,895.  The doors were classed as types A, B, C, and D.  These different classifications apparently referred to the doors' sizes.  Fourteen doors were type A, two were type B, one was type C, and  one was type D.  The bid did not indicate from which manufacturer defendant intended to procure these doors.  This bid also included 18 operators.  "Void" was written across this bid because it was superceded by later bids.

Plaintiff received a second bid from defendant on September 24, 1997, at 8:41 a.m. in the amount of $69,575.  This bid consisted of three pages; however, only the first and third appear in the record.  On the first page, type A doors are listed, but no quantity is shown.  Type C doors are omitted.  Thus, only three doors, two type B and one type D, are listed.  Pickus testified that the second page of the bid listed two or three additional doors.  Eighteen operators were also included in this bid.  This bid has "void" written over it.  At 8:57 a.m. of the same morning, defendant faxed plaintiff a corrected first page that listed the quantity of type A doors as 13.  All bids contained a statement indicating that, because of potential price increases by suppliers, defendant would not hold prices for more than 30 days and a signed purchase order must be tendered.

On September 26, 1997, the date bidding on the Wheaton Project was to close, plaintiff received four additional bids from other overhead door companies.  The lowest of these was from a company called Door Systems in the amount of $113,500.  Pickus stated that, after receiving these bids, he became concerned about defendant's bid because it was considerably lower and telephoned Murphy to express his concern.  Pickus testified to the following conversation with Murphy.  He advised Murphy that he believed defendant's bid was erroneous.  Both Pickus and Murphy opened plans to the Wheaton Project in their respective offices.  They went over the plans to insure defendant's bid complied with them.  Murphy assured Pickus that the bid was correct.  Pickus also inquired as to whether the bid had been sent to other general contractors, and Murphy said that it had.  Pickus told Murphy that he felt the bid was too low and that Murphy should advise all of the general contractors to whom it had been sent of this problem.  Pickus explained that, if he did not use the bid and the other general contractors did, plaintiff would be at a competitive disadvantage relative to the other general contractors.  Murphy stated the bid was correct and would be honored.  Pickus informed Murphy that plaintiff would be using the bid and if it was awarded the project, it would forward a subcontract to defendant.  Murphy replied, "Fine, I look forward to working with you" and added, "Good luck."  Defendant disputes whether this conversation occurred.  Plaintiff was awarded the project later the same day.

On October 1, 1997, defendant faxed plaintiff a new bid, lowering the price to $66,000.  Plaintiff contends that there was some contact between plaintiff and defendant in the 30 days following the date defendant's last bid was received.  Defendant disputes this contention.  Outside of defendant's October 1, 1997, fax, the record does not divulge the nature of any such contact.  It is undisputed that plaintiff did not forward a signed purchase order or any other writing indicating the acceptance of defendant's bid during this period.

Plaintiff contacted defendant early in November 1997 to set up a meeting to award defendant the contract for the overhead door system.  The meeting took place on November 17, 1997.  Pickus was called into the meeting as it was nearing completion.  Murphy told Pickus that he had not figured the specified manufacturer, Fimble,  into the bid and that defendant was no longer willing to enter into a contract based on its bid.  Murphy stated that the door on which defendant had based its bid was equal or superior to the door identified in the plans and specifications for the project and that he would be able to get the architect to approve it.  The architect, however, did not do so.

Subsequently, defendant submitted additional proposals using different doors.  All were rejected by the architect.  Finally, on May 13, 1998, defendant submitted a proposal using Fimble doors at a cost of $122,800.  Pickus then spoke with Hooker about the matter.  Hooker told Pickus that the only way it would perform the job was if plaintiff sent defendant a contract reflecting the May 13 proposal.  Plaintiff declined and instead entered into a contract with Door Systems at a cost of $114,500.

Plaintiff then filed this action, seeking damages on a promissory estoppel theory.  After a bench trial, the court found for plaintiff.  The trial court found that plaintiff had established a 
prima facie
 case of promissory estoppel.  The court held that defendant's bid was not ambiguous despite not mentioning the manufacturer, as it was based on the plans and specifications for the Wheaton Project.  The court noted that the parties agreed that one typically has plans and specifications available when one makes a bid.  The court found Pickus's testimony credible regarding the conversation he purported to have had with Murphy.  The court acknowledged that defendant's last bid, of which the second page was not made a part of the record, included only 16 doors, although  the plans called for 18.  The court reduced damages proportionately as a result.  Regarding the 30-day written confirmation provision in defendant's bid, the court observed that, in the construction industry, this was not a firm rule.  Accordingly, the trial court awarded plaintiff $35,079.  Defendant now appeals.

ANALYSIS

In order to succeed on a claim of promissory estoppel, a plaintiff must show (1) that the defendant made a promise unambiguous in its terms, (2) that the plaintiff relied on the promise, (3) that this reliance was expected and foreseeable from the defendant's position, and (4) that the plaintiff's reliance on the promise was detrimental.  
Gerson Electric Construction Co. v. Honeywell, Inc.
, 117 Ill. App. 3d 309, 312 (1983).  Defendant contends that plaintiff failed to demonstrate both the existence of an unambiguous promise and that plaintiff's reliance was foreseeable to defendant.  As this appeal comes to us following a bench trial, we will not disturb the decision of the trial court unless it is against the manifest weight of the evidence.  
Zink v. Maple Investment & Development Corp.
, 247 Ill. App. 3d 1032, 1036 (1993).  A decision is contrary to the manifest weight of the evidence only where the opposite conclusion is clearly evident  
Zink
, 247 Ill. App. 3d at 1036.

Turning to defendant's first argument, we conclude that the trial court's determination that an unambiguous promise was made is not contrary to the manifest weight of the evidence.  Defendant points to two sources of potential ambiguity.  First, defendant asserts that the bid upon which plaintiff relied was for 16 doors, while the Wheaton Project required 18 doors.  We find this argument unpersuasive.  The trial court based its award on defendant's having forwarded a bid to plaintiff for 16 doors.  The bid sheet itself, showing a bid for 16 doors, is contained in the record.  That the project required two additional doors says nothing about whether the bid unambiguously stated that defendant would provide plaintiff with 16 doors at the quoted cost.  Defendant does not explain how its bid, taken as a bid for 16 doors as the trial court took it, was in some way ambiguous.

Second, defendant argues that its bid was ambiguous because it did not specify the manufacturer of the doors it proposed to use.  The trial court ruled that no ambiguity existed sufficient to preclude the application of promissory estoppel because defendant's bid was based on the plans and specifications for the Wheaton Project, which clearly set forth what constituted an acceptable door.  Evidence in the record supported this finding.  Hooker testified that defendant consults plans and specifications prior to submitting bids on projects.  Further, Pickus recounted the conversation he had with Murphy on September 26, 1997.  During this conversation, Pickus and Murphy compared defendant's bid with the plans for the Wheaton Project and Murphy assured Pickus that defendant's bid was correct.

Defendant asserts that evidence to the contrary exists.  According to defendant, it was undisputed at trial that, when a subcontractor intended a particular manufacturer, the manufacturer was specified in the subcontractor's bid.  In support, defendant points to three bids from other subcontractors that did name specific manufacturers and testimony from Hooker that defendant's bid did not.  Such evidence is wholly insufficient to establish a trade practice or custom.  See 
Clark v. General Foods Corp.
, 81 Ill. App. 3d 74, 78 (1980), quoting 
Kelly v. Carroll
, 223 Ill. App. 309, 315-16 (1921) (" 'A usage or custom to be binding must be so uniform, long-established and generally acquiesced in and so well known as to induce the belief that the parties contracted with reference to it, nothing appearing in their contract to the contrary, and the existence of such a custom or usage cannot be considered established when the proof consists of a few isolated instances' ").  If plaintiff should have known to interpret defendant's bid in light of the custom to which defendant alludes, defendant failed to introduce any substantial evidence of this at trial.

Some support for defendant's position can be found in the fact that the bid sheet contained a space to indicate that the bid was based on plans and specifications.  This space was left blank.  However, the weight of this evidence is undermined by the fact that defendant's later bids, including its final one using Fimble doors, also contained no indication in the space provided that the bid was based on any plans or specifications.  In any event, it was for the trial court, sitting as the trier of fact, to resolve conflicts in the evidence.  
Rodgers v. Withers
, 229 Ill. App. 3d 246, 250 (1992).  The trial court's decision on the ambiguity issue finds support in the record, and, although evidence to the contrary exists, it is not so compelling as to render the trial court's decision erroneous.  We will not substitute our judgment for that of the trial court in such circumstances.

Defendant relies on 
Camosy, Inc. v. River Steel, Inc.
, 253 Ill. App. 3d 670 (1993), in support of its argument.  In that case, a subcontractor submitted a bid to a general contractor that stated it would "[f]urnish and erect" structural metal on one of the general contractor's projects.  
Camosy
, 253 Ill. App. 3d at 672.  On the same page of the bid, a second section listed "[e]rection" among things excluded from the bid.  
Camosy
, 253 Ill. App. 3d at 672.  This court held that the bid was ambiguous such that promissory estoppel would not lie.  
Camosy
, 253 Ill. App. 3d at 676-77.  We find 
Camosy
 distinguishable.  Unlike 
Camosy
, the instant case does not involve a bid containing a blatant contradiction on its face.  Rather, we are here concerned with whether the bid adequately described what was being proposed.  We reject defendant's contention that the trial court found the bid to be ambiguous.  Defendant's reliance on certain statements the trial court made in rendering its decision that acknowledged that the bid itself did not specify the manufacturer of the doors is misplaced.  Read as a whole, the trial court clearly found that the bid, viewed in light of the plans and specifications for the Wheaton Project, was not ambiguous.  As noted above, this finding is not contrary to the manifest weight of the evidence.  Thus, 
Camosy
 provides little guidance here.

We now turn to defendant's next argument.  Defendant contends that plaintiff's reliance upon its bid was not reasonable and hence not foreseeable from defendant's point of view.  Defendant advances two theories on this point.  First, defendant asserts that, because its bid was so much lower than the others plaintiff received, plaintiff knew it was erroneous and thus should not have relied on it.  Second, defendant points to plaintiff's failure to forward a signed purchase order or some other writing to it within 30 days, as was required in the bid documents.  According to defendant, this failure to comply with a condition required by the bid renders any subsequent reliance unreasonable.

We find defendant's first contention unpersuasive.  It is generally true that a general contractor that receives a bid that is substantially lower than other bids it receives is put on notice that the bid may be erroneous.  See 
S.N. Nielsen Co. v. National Heat & Power Co.
, 32 Ill. App. 3d 941, 945-46 (1975).  In the present case, Pickus, when confronted by defendant's low bid, contacted defendant and expressed his concern that the bid was erroneous.  Murphy stated that the bid was accurate, that defendant would honor it, and that it had been submitted to other general contractors.  Murphy's assurances were sufficient to dispel any impression held by Pickus that the bid had been made in error.  Under these circumstances, we cannot find that the trial court's decision was against the manifest weight of the evidence simply because defendant's bid was substantially lower than the others received by plaintiff.

Second, defendant asserts that plaintiff's failure to forward a written purchase within 30 days, as specified on the face of the bid, renders any subsequent reliance unreasonable.  It is undisputed that no such order was tendered to defendant.  The trial court rejected this argument, finding that the 30-day provision was not a firm rule in the construction industry and that "generally, things go beyond that time frame."  Defendant contends that there is no evidence in the record to support this finding.

Defendant's observation is correct.  In its brief, plaintiff points to no basis for this finding, and our reading of the record reveals none as well.  In fact, the only evidence in the record addressing the existence of a trade practice regarding the 30-day provision is contrary to the trial court's finding.  Hooker explained that defendant included this provision in the bid because its suppliers would only hold their prices for 30 days.  Hooker added that it is a custom of the industry that contracts be in writing and that subcontractors order no material until they receive something in writing.  Defendant also points out that two other door companies included similar provisions in their bids; however, this fact provides weak support, at best, for the existence of this trade practice, as the inclusion of such provisions in these bids says nothing as to whether they were typically enforced.  Plaintiff submitted no contradictory evidence from which the existence of a trade practice could be inferred.

The party asserting the existence of a trade practice bears the burden of proving its existence.  
Katz v. Brooks
, 65 Ill. App. 2d 155, 160 (1965).  Plaintiff submitted no evidence of a trade practice indicating that such provisions like the one in defendant's bid were routinely disregarded.  Accordingly, the trial court erred in finding that such a trade practice existed.  See 
Roberts v. Buske
 12 Ill. App. 3d 630, 632 (1973).  Absent this trade practice, plaintiff cannot establish that it was reasonable for it to rely on defendant's bid, after the bid was to expire on its own terms, without taking the specified action to consummate the contract.

Plaintiff relies on 
Illinois Valley Asphalt, Inc. v. J.F. Edwards Construction Co.
, 90 Ill. App. 3d 768 (1980), in arguing that its failure to respond within 30 days does not preclude its promissory estoppel claim.  That case is distinguishable.  
Illinois Valley Asphalt
 did involve a factual situation similar to the present case, where a general contractor responded to a subcontractor's bid in writing after the date the subcontractor fixed in its bid.  
Illinois Valley Asphalt
, 90 Ill. App. 3d at 769-70.  However, after the bidding had opened, a representative of the general contractor told a representative of the subcontractor that, if the general contractor was awarded the contract, it would award the subcontract to the subcontractor.  
Illinois Valley Asphalt
, 90 Ill. App. 3d at 769.  At trial, evidence was presented that a trade practice existed that such a communication was sufficient to award the subcontract.  
Illinois Valley Asphalt
, 90 Ill. App. 3d at 770.  In that case, the plaintiff presented evidence that established a trade practice demonstrating that it was reasonable to rely on the defendant's bid.  In the present case, no such evidence exists.

Plaintiff points out that a conversation occurred between Murphy and Pickus similar to the one the court relied on in 
Illinois Valley Asphalt
.  As noted above, in 
Illinois Valley Asphalt
 it was shown that the conversation was sufficient to award the subcontract to the subcontractor considered in the context of a prevailing trade practice.  The existence of a trade practice is a question of fact.  
Clark
, 81 Ill. App. 3d at 78-79.  We cannot assume the existence of a similar trade practice absent evidence to support its existence merely because such a trade practice was proved in 
Illinois Valley Asphalt
.  Hence, this similarity between the two cases provides no support for plaintiff's position

In light of the foregoing, the judgment of the circuit court of Lake County is reversed.

Reversed.

HUTCHINSON, P.J., and BOWMAN, J., concur.