Robert D. **BJORK**, Plaintiff-Appellee,

v.

**UNITED STATES of America,**
**Defendant-Appellant,**

and

George E. **Mahin, Director, Illinois Department of Revenue, Defendant-Appellee.**

No. 72–1936.

United States Court of Appeals, Seventh Circuit.

Argued June 13, 1973.

Decided Oct. 4, 1973.

Scott P. Crampton, Asst. Atty. Gen., Karl Schmeidler, Atty., Tax Div., Dept. of Justice, Washington, D. C., James R. Thompson, U. S. Atty., William T. Huyck and James H. Alesia, Asst. U. S. Attys., Chicago, Ill., for defendant-appellant, United States.

Robert D. Bjork, pro se.

William J. Scott, Atty. Gen., Bonny Barezky, Asst. Atty. Gen., Chicago, Ill., for defendant-appellee, George E. Mahin, Director of Ill. Dept. of Revenue.

Before FAIRCHILD and SPRECHER, Circuit Judges, and GRANT,* Senior District Judge.

SPRECHER, Circuit Judge.

The Cline Letter Service, Inc. (Cline) made a bulk transfer of its card and gift shop and office supply business to Martin J. Kucera in July, 1971, under the provisions of Article 6 of the Uniform Commercial Code, Ill.Rev.Stat. ch. 26, §§ 6–101 to –110 (1971). On July 15, 1971, Kucera gave notice to those creditors of Cline who appeared on the transferee's sworn list of creditors that on July 30 he would purchase Cline's business for $13,000 cash. All the requirements of the Bulk Transfer provisions of the U. C.C., as enacted in Illinois,[1] were complied with.

Among Cline's creditors were the United States (the Government) and the Director of the Illinois Department of Revenue (the State). On July 24 the State, acting pursuant to the Retailers' Occupation Tax Act, § 5j (Ill.Rev.Stat. ch. 120, § 444j (1971)),[2] issued a Bulk

---

* Senior District Judge Robert A. Grant of the Northern District of Indiana is sitting by designation.

1. In the official version of the U.C.C., Article 6 comprises eleven sections, one of which, § 6–106, is optional. Illinois is one of the 32 jurisdictions which has chosen not to adopt the optional section. Since § 6–106 is the only section which compels the transferee to see to the application of the proceeds of the transfer, the effect of choosing not to adopt the section is to enact a creditor-notice statute rather than a creditor-protection statute.

2. "If any taxpayer, outside the usual course of his business, sells or transfers the major part of any one or more of (A) the stock of goods which he is engaged in the business of selling, or (B) the furniture or fixtures, or (C) the machinery and equipment, of any business that is subject to the provisions of this Act, the purchaser or transferee of such assets shall, within 10 days after the sale or transfer, file a report of the sale or transfer with the Department disclosing the name and address of the seller or transferor, the name and address of the purchaser or transferee, the date of the sale or transfer, a description of the property sold, the amount of the purchase price and such other information as the Department may reasonably require. The seller or transferor shall pay the Department the amount of tax, penalty and interest (if any) due from him under this Act up to the date of the sale. The seller or transferor, or the purchaser or transferee, at least 30 days before the date of the sale or transfer, may notify the Department of the intended sale or transfer and request the Department to audit the books and records of the seller or transferor, or to do whatever else may be necessary to determine how much the seller or transferor owes to the Department hereunder up to the date of the sale or transfer. The Department shall take such

Sales Stop Order to Kucera, directing him to withhold $2,500 from the purchase price as a fund from which to satisfy Cline's obligation to the State for taxes due under the Act. At that time, the obligation was undetermined as to amount. In fulfillment of this stop order, Kucera procured a certified check for $2,500 payable to himself and endorsed it to his attorney, Robert D. Bjork, on July 30, 1971, the date the purchase was closed. Bjork thereafter held the check as an escrow deposit pending determination of the exact amount owed to the State by Cline.

On October 10, 1971, the Government assessed income withholding, Social Security and unemployment taxes against Cline in the amount of $2,323.69. Bjork was served with a notice of levy on October 27, and notice of the tax lien was filed in the appropriate public office the same day. When the Government and the State failed to reach agreement on the proper disposition of the fund and both sides continued to press Bjork, he filed this statutory interpleader action (28 U.S.C. § 1335) on January 14, in the district court. Shortly thereafter, when Cline filed its final return on January 31, 1972, the exact amount of the retailers' occupation tax due the State was determined.

In an opinion filed July 24, 1972, the district court denied the Government's motion for summary judgment. The State's subsequent motion for summary judgment was granted on August 7, 1972, and judgment was entered awarding the fund as follows: $1,387.62 to the State, $24.48 in costs and $400.00 in attorney's fees to Bjork and the remaining $687.90 to the Government. The Government has appealed, and we reverse.

steps as may be appropriate to comply with such request.

"The purchaser or transferee shall withhold enough of the purchase price to cover the amount of all tax, penalty and interest due and unpaid by the seller or transferor under this Act or, if the payment of money or property is not involved, shall withhold the performance of the condition that constitutes the consideration for the sale or transfer, until the seller or transferor produces a receipt from the Department showing that such tax, penalty and interest have been paid or a certificate from the Department showing that no tax, penalty or interest is due from the seller or transferor under this Act.

"The purchaser or transferee is relieved of any duty to withhold from the purchase price and of any liability for tax, penalty or interest due hereunder from the seller or transferor if the Department fails to notify the purchaser or transferee of the amount claimed by the Department to be due hereunder from the seller or transferor within 30 days after the sale or transfer has been reported to the Department where the seller or transferor, or the purchaser or transferee, did not notify the Department of the intended sale or transfer at least 30 days before the date of the sale or transfer, or if the Department fails to notify the purchaser or transferee of the amount claimed by the Department to be due hereunder from the seller or transferor within 10 days after the sale or transfer has been reported to the Department where the seller or transferor, or the purchaser or transferee, did notify the Department of the intended sale or transfer at least 30 days before it occurred and did request an audit or such other review as might enable the Department to determine how much it claims to be due hereunder from the seller or transferor up to the date of the sale or transfer.

"If the seller or transferor fails to pay the tax, penalty and interest (if any) due from him hereunder and the Department makes timely claim therefor against the purchaser or transferee as hereinabove provided, then the purchaser or transferee shall pay the amount so withheld from the purchase price to the Department. If the purchaser or transferee fails to comply with the requirements of this Section, the purchaser or transferee shall be personally liable to the Department for the amount owed hereunder by the seller or transferor to the Department up to the amount of the reasonable value of the property acquired by the purchaser or transferee.

"Any person who shall acquire any property or rights thereto which, at the time of such acquisition, is subject to a valid lien in favor of the Department shall be personally liable to the Department for a sum equal to the amount of taxes secured by such lien but not to exceed the reasonable value of such property acquired by him."

The issue presented is whether under Illinois law, the escrow fund was Cline's property on October 10, the date when, if at all, the Government's lien attached.[3] As the district court stated:

"Federal tax liens attach only to 'property and rights to property' of the taxpayer. 26 U.S.C. § 6321. State law must be examined to decide whether the taxpayer had any property or rights to property. Aquilino v. United States, 363 U.S. 509, 512–513, [80 S.Ct. 1277, 4 L.Ed.2d 1365] (1960); [Avco Delta Corp. Canada Ltd. v. United States, 484 F.2d 692 (7th Cir., 1973);] Continental Oil Co. v. United States, 326 F.Supp. 266, 269 (S.D.N.Y.1971). If under state law the taxpayer does have property or rights to property then it is a question of federal law whether the federal lien has priority over the liens of others. United States v. Security Trust & Savings Bank, 340 U.S. 47, 49–50, [71 S.Ct. 111, 95 L.Ed. 53] (1950)."[4]

The district court concluded that at the time of the sale when the escrow fund was established (July 30), the State had a vested interest in the fund and taxpayer Cline had only a contingent interest to the extent of any money remaining after that due to the State and, therefore, that the Government's lien attached on October 10 only to this contingent interest. We do not agree that the transfer of funds into an escrow account established a vested interest in the State. Ill.Rev.Stat. ch. 120, § 444.

By ascertaining ownership of the property at the time of transfer, we do not seek to determine who had the right to possession or physical custody of the fund. If that were the question, the answer would be simple: the right to possession passed from Kucera to Bjork at the time of the transfer, and it was still in Bjork on October 10. Indeed, it remained in Bjork until he endorsed the check and deposited it in the district court registry. At any time between July 30 and the date of deposit, Bjork could unquestionably have cashed the check and received the proceeds. Just as clearly, he would not have been able to retain the proceeds as his own, for Bjork had no beneficial interest in the fund. The ownership of the beneficial interest is what we seek to determine.

Immediately before the transfer, Kucera had the beneficial interest in the fund. Absent a stop order, there is no question but that the beneficial interest in what became the fund would have shifted to Cline at the time of the transfer. This result is dictated by the contract between Cline and Kucera by which Kucera agreed to give Cline a full $13,000 in cash in return for Cline's business assets. Since Cline performed his part of the bargain, had there been no stop order Cline would have prevailed against Kucera in an action to recover the full $13,000.

How did the stop order affect the shifting of the beneficial interest on July 30th? Section 5j's (*supra* note 2) purpose is to insure the existence of

3. The State does not argue that any lien it may have has priority over the Government's lien. Bjork makes such an argument for the State, based on 26 U.S.C. §§ 6323(c)(1)(A)(iii) and (B). However, the argument fails to take the statutory definitions into account. The State's stop order to Kucera and Kucera's subsequent endorsement of the check to Bjork with the understanding that Bjork would pay the State the amount it finally assessed do not constitute an "obligatory disbursement agreement" within the meaning of § 6323(c)(4)(A). As only one example of the failure of this series of events to fit the definition, Bjork

does not meet the requirement that he have entered into the agreement "in the course of his trade or business."

4. § 6321. Lien for taxes.
   "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States *upon all property and rights to property, whether real or personal, belonging to such person.*" 26 U.S.C. § 6321 (emphasis added).

some cache of the *seller's* property from which the seller's tax liability can be satisfied. To accomplish this purpose, the statute appeals to the purchaser's self-interest in avoiding personal liability for the tax and gives him a means of doing so without breaching his contract with the seller. It provides for the creation of what the parties have referred to as an "escrow fund". Section 5j does not purport to vest ownership of the held fund in the State. On the contrary, it leaves the State to its usual methods of determining and assessing the tax as set out in §§ 5 and 5a of the Act, Ill.Rev.Stat. ch. 120, §§ 444 and 444a.

Under the district court's interpretation of § 5j, the State would be able to acquire a "vested interest" in funds *due*

the taxpayer under a bulk sale contract, an interest good against all creditors who acquire a lien on the property subsequent to the issuance of the stop order. This interpretation effects a suspension of the normal procedures for obtaining a lien,[5] a result which is difficult to justify without clearer authority in the statutory language.[6] Given Section 5j's apparent reliance on the remedial procedures of Sections 5 and 5a of the Act, the most reasonable interpretation of the effect of a stop order is that it insures some cache of the seller's property from which to satisfy the seller's tax liability only insofar as no perfected lien attaches to the fund prior to the determination of the amount of such liability to the State.[7]

5. Section 5 (Ill.Rev.Stat. ch. 120, § 444) imposes a penalty upon the seller for failure to make a return or pay the tax and sets forth the administrative procedures for determining the amount of tax due from the seller. In part, the section provides that if the seller fails to provide a return, the Department shall determine the amount of the tax due from him. Proof of such determination may be made at a hearing before the Department or in any legal proceeding. The Department shall issue to the taxpayer a notice of liability. The latter has 20 days to file a protest and request a hearing. Thereafter, the Department shall issue a final assessment, or, if no protest is filed, the notice of tax liability shall become final. At any time before the final assessment is reduced to judgment, the Department may grant a rehearing, pursuant to which it shall issue a revised final assessment. In the case of a failure to pay the tax or penalty, where the above review procedures have terminated, or where the taxpayer has filed a return, the Department may bring suit to recover this amount. Likewise, the person assessed may file a suit in court for review of the final assessment or revised final assessment.

Section 5a of the Retailers' Occupation Tax Act (Ill.Rev.Stat. ch. 120, § 444a), provides in part that the Department shall have a lien for the tax, penalty or interest, upon all the real and personal property of the taxpayer after a final assessment or revised final assessment has been issued, or whenever a return is filed without payment of the tax or penalty shown therein to be due. Where the lien arises because of the issuance of a final assessment or revised final

assessment, the lien shall not attach until all proceedings in court have terminated. Section 5a also provides for the issuance of a jeopardy assessment lien (*infra* note 7). It further provides that "[n]othing in this Section shall be construed to give the Department a preference over the rights of any bona fide purchaser, mortgagee, judgment creditor or other lien holder arising prior to the filing of a regular notice of lien or a notice of jeopardy assessment lien . . . ."

6. The district court's interpretation cannot be buttressed by the bulk sales provisions of the U.C.C. for Illinois has adopted a creditor-notice statute (*supra* note 1). The Illinois enactment does not obligate the transferee to apply the consideration for the transfer to the debts of the transferor. There is nothing in these provisions which even remotely divests the transferor of his property interest in the purchase price and vests the creditors with such a possessory interest.

7. The State has the authority to proceed rapidly under § 5a, which provides in part: "[I]f the Department finds that the collection of the amount due from any taxpayer will be jeopardized by delay, the Department shall give the taxpayer notice of such findings and shall make demand for immediate return and payment of such tax, whereupon such tax shall become due and payable. If the taxpayer, within 5 days after such notice (or within such extension of time as the Department may grant), does not comply with such notice or show to the Department that the findings in such notice are erroneous, the De-

Accordingly, we conclude that the stop order did not interrupt the transfer of beneficial interest in the fund to Cline on July 30, but only interrupted possession.[8] Unless or until the State proceeded to obtain a lien on the funds, beneficial interest resided in Cline. No State lien having arisen by October 10, Cline had sufficient property interest in the fund for the Government's tax lien to attach. Fine Fashions, Inc. v. United States, 328 F.2d 419 (2d Cir. 1964).

The Government must also prevail in its appeal from the award of attorney's fees and costs to Bjork out of the fund. Bjork depends on the district court's holding that the Government's lien did not attach to sustain his award. Since we reverse that holding and since the law on this point is clearly in the Government's favor when it has a valid lien,[9] we likewise reverse the award of fees and costs.

The judgment of the district court is reversed and the cause remanded with directions to enter judgment awarding the fund to the Government in the full amount of its lien, as determined by the district court. If any amount should remain after the award to the Government, the district court shall determine if this interpleader action was brought by Bjork in good faith.[10] If it should so determine, it shall award Bjork as attorney's fees the amount remaining in the fund, up to $400. If any amount shall remain after the award to Bjork, or if the district court should determine that this action was not brought in good faith, it shall award the remainder to the State, up to the full amount of its lien, as determined by the district court. The remainder, if any, shall be awarded to Cline. Bjork's filing and service fees in the district court are to be assessed against the State.

In view of the relative amounts of the awards reversed herein, we tax costs in this court in favor of the Government, one-fourth of the taxable costs to be assessed against Bjork and three-fourths against the State. No costs shall be paid out of the interpleaded fund.

Reversed and remanded with directions.

---

partment may file a notice of jeopardy assessment lien . . . [which] shall have the same scope and effect as the statutory lien hereinbefore provided for in this Section."
Ill.Rev.Stat. ch. 120, § 444a.

8. The fund does not fit neatly into the strictures of any device-created legal relationship, such as escrow or trust. However, the requirement that the purchaser set aside part of the purchase price is analogous to the institution of a proceeding by means of a writ of attachment to insure preservation of the property until the attachment creditor can obtain a perfected lien. In such a situation, the attachment creditor runs the risk that its *lis pendens* will be ineffective against a federal tax lien which arises and becomes perfected before the attachment creditor obtains a perfected lien. United States v. Security Trust & Savings Bank, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53 (1950).

9. United States v. R. F. Ball Constr. Co., 355 U.S. 587, 588, 78 S.Ct. 442, 2 L.Ed.2d 510 (1958); United States v. Liverpool & London & Globe Ins. Co., 348 U.S. 215, 217, 75 S.Ct. 247, 99 L.Ed. 268 (1955) (per Minton, J.); United States v. State Nat'l Bank, 421 F.2d 519, 521 (2d Cir. 1970); United States v. Gurley, 415 F.2d 144, 150 (5th Cir. 1969); United States v Wilson, 333 F.2d 147, 149 (3d Cir. 1964); Seaboard Sur. Co. v. United States, 306 F.2d 855, 860 (9th Cir. 1962).

10. *See* Aetna Life Ins. Co. v. Bowen, 308 F. Supp. 1394, 1396–1397 (W.D.Mo.1969).