**Dennis W. HOORNSTRA, Plaintiff,**

v.

**UNITED STATES of America, The State of Illinois, Aurora Eby–Brown Corporation, Southwest Mini Mart Corporation, Defendants.**

No. 89 C 8659.

United States District Court,
N.D. Illinois, E.D.

April 22, 1991.

Eileen M. Marutzky, U.S. Attorney's Office, Chicago, Ill., Mark A. Winer, U.S. Dept. of Justice, Tax Div., Washington, D.C., for the U.S.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

Interpleader defendants, the United States of America ("the Federal Government") and the State of Illinois ("the State"), have made cross-motions for summary judgment on the amended interpleader complaint of plaintiff Dennis W. Hoornstra. For the reasons stated below, the Federal Government's motion must be granted and the State's motion denied.

## I. BACKGROUND FACTS

The parties have stipulated to the following facts. In a sales contract dated June 5, 1987, Southwest Mini Mart Corporation ("Mini Mart") agreed to sell all of its business assets related to its Mini Mart at 674 North Broadway, Aurora. Mini Mart sold its assets to Malcolm Quick.

Pursuant to a sales contract, Mr. Quick paid $50,000.00 for the Mini Mart assets. Of this $50,000.00, Mr. Quick paid a total of $25,000.00 to the business broker as a commission and to the landlord of the premises to cure arrearages under the lease. In order to protect himself from transferee liability under the Bulk Sales Provisions of the Illinois revenue acts, however, the sales contract provided for plaintiff Dennis Hoornstra, Mr. Quick's attorney, to hold the remaining $25,000.00 in escrow.

By this court's order, Mr. Hoornstra deposited $19,437.05 of the $25,000.00 with the Clerk of the District Court. An additional $6,000.00 remains to be remitted by VR Business Brokers to Dennis Hoornstra, who will then deposit it with the Clerk. Thus, the total subject matter of this interpleader action will be $25,437.05, plus any additional earned interest.

Both the Federal Government and the State claim the $25,437.05 interpled fund. The Federal Government bases its claim on unpaid federal employment taxes. Specifically, the United States Internal Revenue Service ("IRS") assessed employment taxes due from Mini Mart in the following amounts on the following dates: (1) $10,-247.25 on June 16, 1986; (2) $18,451.16 on September 8, 1986; (3) $18,784.77 on March 30, 1987; (4) $17,150.01 on June 22, 1987; and (5) $10,328.16 on March 9, 1987.

The State bases its claim to the interpled fund on unpaid state sales taxes. On September 25, 1987, a Notice to Creditors of Bulk Transfers was served on the Illinois Department of Revenue ("Department") pursuant to the sale of Mini Mart to Mr. Quick. On October 2, 1987 the Department issued a Bulk Sales Stop Order in the amount of $104,000.00 to Mr. Quick pursuant to the provisions of Section 5j of the Retailers' Occupation Tax Act, Ill.Ann.Stat. ch. 120, § 444j (Smith–Hurd Supp.1990), and Section 902(d) of the Illinois Income Tax Act. The basis for the issuance of the Bulk Sales Stop Order was open sales taxes for the certain months between August of 1986 and September of 1987. The open sales taxes totaled $104,000.00.

On November 27, 1987 Mini Mart filed for bankruptcy. The bankruptcy trustee abandoned any interest that the estate may have in the escrow funds. Obviously, payment in full of either the Federal Government's claim or the State's claim to the interpled fund would exhaust it. Thus, this dispute.

## II. DISCUSSION

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Normally, in ruling on a motion for summary judgment the evidence of the non-movant must be believed, and all justifiable inferences must be drawn in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). In this case, however, the parties have stipulated to all of the facts necessary to resolve this dispute.

The Federal Government first contends that under Sections 6321 and 6322 of the Internal Revenue Code, its federal tax lien has priority over the State's interest in the interpled fund. 26 U.S.C. §§ 6321–22. As the State notes, however, although the priority of liens is determined by reference to federal law, state law determines the nature of the property interest of the taxpayer which is subject to a federal tax lien. As the Supreme Court has stated:

The threshold question ... in all cases where the Federal Government asserts its tax lien, is whether and to what extent the taxpayer had "property" or "rights to property" to which the tax lien could attach. In answering that ques-

tion, both federal and state courts must look to state law, for it has long been the rule that "in the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property * * * sought to be reached by the statute."

*Aquilino v. United States,* 363 U.S. 509, 512–13, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960), *quoting Morgan v. Commissioner,* 309 U.S. 78, 82, 60 S.Ct. 424, 426, 84 L.Ed. 585 (1940).

■ The State goes on to argue that because Mini Mart's contractual interest in the $25,000.00 escrow amount is only contingent, and the condition precedent to that right has yet to be met, in essence, the Federal Government has a priority lien in nothing. In support of its argument, the State cites the section of the sales contract which creates and governs the $25,000.00 escrow fund. The section provides:

> If Seller (Mini Mart) delivers to Buyer (Mr. Quick) at closing a receipt or certificate from the Illinois Department of Revenue and the Illinois Department of Labor dated subsequent to the date of this contract, showing all such taxes, penalties and interest have been paid or that no such taxes, penalties or interest are due from the Seller or Buyer or if a Stop Order is issued to Buyer and it has been subsequently withdrawn, then the sum withheld, minus any amount claimed by either or both the Internal Revenue Service or the Illinois Department of Revenue to be due from Seller as taxes, penalties or interest shall be paid to Seller. . . .

(Sales Contract, ¶ 5(c), attached to Stipulation of Facts as Exhibit A.)

The parties agree that Mini Mart has never delivered to Mr. Quick a receipt or certificate showing that all taxes, penalties and interest have been paid from either the Illinois Department of Revenue or the Illinois Department of Labor. (Stipulation of Facts, ¶ 4.) Hence, the State argues that because Mini Mart has not satisfied its condition precedent in the sales contract, under Illinois law it has no enforceable

legal claim to the escrowed funds to which the IRS tax lien can attach.

In support of its position, however, the Government cites *Bjork v. United States,* 486 F.2d 934 (7th Cir.1973). The court finds the *Bjork* decision dispositive here.

*Bjork* involved the sale of a card and gift shop and office supply business in July of 1971. Prior to the closing of the sale, the State of Illinois issued a bulk sales stop order to the buyer. The stop order directed the buyer to withhold $2,500.00 from the purchase price as a fund from which to satisfy the seller's obligation to the State for taxes due under the Retailers' Occupation Tax Act. At that time the State had yet to determine the amount of the tax obligation owed it by the seller.

In fulfillment of the State's stop order, the seller procured a $2,500.00 certified check made payable to himself. He endorsed the check to his attorney, Robert Bjork on July 30, 1971, the date the sale was closed. Mr. Bjork then deposited the check in escrow pending a determination of the exact amount of back taxes owed the State by the seller.

On October 10, 1971, the United States assessed income withholding, Social Security and unemployment taxes against the seller. These assessments totalled $2,323.69. Since both the United States and the State claimed the $2,500.00 in escrow, on January 14, 1972 Mr. Bjork filed an interpleader action in the district court. On January 31, 1972 the State determined the exact amount of the retailers' occupation tax due the State.

The issue facing the court in *Bjork* was similar to the issue facing this court: was the escrow fund the seller's property on October 10, 1971 when the Government's tax lien attached? The Seventh Circuit Court of appeals held that it was.

Applying Illinois law, the court based its decision on both the effect of the stop order and the contract between the seller and the buyer. The court held that the stop order did not interrupt the transfer of beneficial interest in the escrow fund from the buyer to the seller. It only interrupted possession. *Id.,* 486 F.2d at 939. Accord-

ingly, the seller had a sufficient property interest in the $2,500 fund for the federal tax lien to attach. *Id.*

Applying the holding of *Bjork* to this case, it is clear that the State's stop order did not divest Mini Mart of its interest in the $25,000.00. It merely interrupted Mini Mart's ability to take possession of the $25,000.00.

The court in *Bjork* also relied, however, upon the contract between the seller and buyer. Under that contract, the buyer agreed to give the seller a full $13,000.00 in cash in return for the seller's business assets. *Id.*, 486 F.2d at 937. In this case, however, Mr. Quick agreed to give Mini Mart the full $25,000.00 escrow amount *only if* Mini Mart satisfied its outstanding State tax obligations. (Sales Contract, ¶ 5(c).) The State argues that this difference is critical. The court disagrees.

In *Bjork*, too, the seller was entitled to the $2,500.00 escrow amount only if the seller satisfied its tax obligations. In *Bjork*, however, this "condition precedent" was imposed pursuant to the Retailers' Occupation Tax Act, rather than pursuant to both the Act and the parties' express contract. *Bjork*, 486 F.2d at 938.

 It makes no difference that in this case the parties specifically stated in their contract that Mini Mart would be entitled to the $25,000.00 escrow fund only if it satisfied its state tax obligations. Even without such a contractual provision, under the Retailers' Occupation Tax Act, Mini Mart would be entitled to the $25,000.00 escrow fund only after it satisfied its state tax obligations. *Id.* The mere inclusion of a provision in a sales contract reiterating the contingent nature of an escrow account established pursuant to the provisions of the Retailers' Occupation Tax Act does not divest a seller of an interest in the escrow account to which a federal tax lien can attach.

Thus, this court finds that under *Bjork*, Mini Mart has a beneficial interest in the $25,000.00 escrow account sufficient to support the federal tax lien. Accordingly, because the parties do not dispute that the federal tax lien arose prior to any purport-ed State tax lien, *see* 26 U.S.C. §§ 6321–6323, the Federal Government's motion for summary judgment must be granted and the State's motion for summary judgment must be denied. *United States v. Pioneer American Insurance Co.*, 374 U.S. 84, 87–88, 83 S.Ct. 1651, 1654–55, 10 L.Ed.2d 770 (1963).

## III. CONCLUSION

For the reasons stated in this memorandum opinion and order: (1) the United States' motion for summary judgment on plaintiff's amended interpleader complaint is GRANTED; (2) the State of Illinois' cross-motion for summary judgment is DENIED; and (3) this case is DISMISSED in its entirety.